[S. F. No. 5990.  In Bank.—April 10, 1912.]

A. B. RUGGLES, Trustee for J. B. Hill and his Creditors, Respondent, v. CORA A. HELFRICH, Defendant and Respondent, and ALPHONSINE ROMER, Defendant and Appellant.

ATTACHMENT—SALE OF SEAT IN STOCK BOARD—PRESIDENT EX OFFICIO TRUSTEE FOR BOARD—NOTICE OF ATTACHMENT AND OF EXECUTION.— Under article XIII of the San Francisco Stock and Exchange Board, providing that the seat of a delinquent member "shall revert to the board and be appropriated to satisfy his creditors in the board," and making the president of the board *ex officio* a trustee for the indebted member and his creditors to dispose of his seat and the proceeds arising therefrom, the president is merely an agent for the board, and a custodian for it of the money realized from a sale of the seat, and notices of an attachment of and of an execution against such money, at the suit of a creditor of the delinquent member, were properly directed to the board, although served upon the president.

ID.—PRIORITY OF ATTACHMENT OVER SUBSEQUENT ASSIGNMENT—FINDINGS.—In an action of interpleader to determine the right to a portion of such money as between an attaching creditor of the delinquent member and his assignee, it is held, that the finding that the assignment in question, although purporting to have been made prior to the attachment, was in fact subsequent thereto, is sustained by the evidence.

APPEAL from a judgment of the Superior Court of the City and County of San Francisco and from an order refusing a new trial. James M. Troutt, Judge.

The facts are stated in the opinion of the court.

Humphrey & Hubbard, and William P. Hubbard, for Appellant.

W. H. Barrows, for Cora A. Helfrich, Respondent.

Aitken & Aitken, for Plaintiff and Respondent.

MELVIN, J.—This is an appeal by one of two interpleading creditors from a judgment in favor of the other and from the order denying a motion for a new trial.

Ruggles, who was president of the San Francisco Stock and Exchange Board and as such officer the trustee of five thousand dollars realized from the sale of a suspended member's place on the said board, brought this action, in accordance with the provisions of section 386 of the Code of Civil Procedure to compel the defendants to interplead regarding their right to the sum of $437 to which each made claim. He alleged that he had no claim upon the money, and that he was ignorant of the respective rights of the defendants. He offered to deposit and did deposit the money in court. Each defendant filed a cross-complaint; their claims were litigated and judgment was rendered in favor of Cora A. Helfrich, a creditor of one Robert Romer. She claimed the money by virtue of an attachment and a subsequent levy of execution in a suit against Robert Romer. The other defendant, who is appellant here, is the mother of said Robert Romer. She sought to establish title by an assignment from her son antedating respondent Helfrich's attachment.

The first assignment of error made by appellant is that her demurrer to the complaint should have been sustained, but without quotation from the complaint we may say that it sufficiently complies with the requirements of section 386 of the Code of Civil Procedure.

As before stated, A. B. Ruggles was president of the San Francisco Stock and Exchange Board. Article XIII of the constitution of the board provides that any member who has been suspended for six months and has not made a satisfactory settlement of his contracts in the board shall be deprived of all privileges of membership "and his seat shall revert to the board and shall be appropriated to satisfy his creditors in the

board." The article further provides a calling by the president of the board of a meeting of the creditors in the board of the delinquent member and the presentation of their claims to said president. Then follows the enactment that the "president in all such cases shall be *ex officio* a trustee for such person and for his creditors in the board, and the said trustee shall be vested with all the rights and privileges formerly held by such person in the board, and shall dispose of the same in the same manner that a person retiring in good standing may dispose of his seat and privileges. The proceeds of any such disposition so made shall be devoted by the said trustee to discharging the obligations due by such person to members of the board." The rest of the article pertains to the disposition of the surplus, if any, or the prorating by the trustee of the proceeds of the sale if they be insufficient to pay all the debts of the ousted member due to his associates. It is agreed by all parties that the seat of one J. B. Hill was sold, pursuant to said article XIII of the constitution of the Stock and Exchange Board on December 12, 1906, and at that time there came into the possession of A. B. Ruggles, as president of said board, the sum of five thousand dollars as the proceeds of this sale; that said J. B. Hill was indebted to Robert Romer in the sum of $437; and that Ruggles holds possession of said sum in his capacity as trustee.

Alphonsine Romer's purported assignment from her son bears date July 27, 1906, and is as follows:—

"For value received I hereby sell, assign, transfer and set over unto Alphonsine Romer all sums of money belonging to me, in the hands of the San Francisco Stock & Exchange Board from the said Hill for me. Said sum being about $437.00 as found owing from said Hill to me by said Board.

ROBERT ROMER."

It is admitted that notice of this alleged assignment was not served upon the San Francisco Stock & Exchange Board by delivery to the assistant secretary until February 25, 1908, more than a year after service of attachment in the case of Cora A. Helfrich *v.* Robert Romer, and only three days before the levy of execution in that case. The court, while making no finding of actual fraud, did find that the attachment, served February 9, 1907, was prior to any assignment made by Romer to his mother, although both of them testified that

said purported assignment was made about the time of its date, July 27, 1906. The finding was justified by the evidence for several reasons. In the first place, the late delivery of the assignment to the board scarcely comported with the declarations by appellant and her son of its early existence. Secondly, Robert Romer commenced a suit on December 12, 1906, against Hill and the San Francisco Stock & Exchange Board as defendants, in which he asserted that all of the proceeds of the sale of Hill's seat belonged to him, and he prosecuted that suit until final judgment against him on October 24, 1907. Robert Romer also made formal and solemn affidavit in December, 1907, in the suit of Helfrich v. Romer that the $437 was his property. And finally, the instrument itself is inconsistent with the admitted facts in the case, for while it is dated two days after Hill's suspension from the board, the sale of Hill's membership did not occur until months later,— namely, on December 12, 1906, and there were no "sums of money belonging to" Romer either in the custody of the board or the possession of A. B. Ruggles at the purported date of the assignment. In view of these undisputed facts, the court below would have been afflicted with wondrous credulity if any other finding had been made.

But the all important question in the case is raised by appellant's attack upon the sufficiency of the levies of attachment and execution. The complaint alleged: "That at the time when said sum of five thousand dollars so came into plaintiff's possession, said J. B. Hill was indebted to one Robert Romer in the sum of $437.00 and plaintiff as trustee for the said J. B. Hill and his creditors took possession of said sum and ever since has held and now holds possession of said sum of $437.00 in his said capacity as trustee." This averment was adopted by respondent Cora A. Helfrich in her cross-complaint. It was also alleged in the complaint, adopted as part of the said cross-complaint, and proved at the trial, that the notices both of attachment and of execution were directed to the San Francisco Stock & Exchange Board, although served upon A. B. Ruggles as its president. Appellant advanced the proposition (and reserved the point by timely demurrer, objections to evidence, and specifications of alleged error), that there had never been any proper and valid levy upon the trustee, and that therefore the fund was available for

payment to her when notice of the assignment to her from her son was served. To this argument two answers are made. One is that appellant is in no position to attack the judgment, even under her own theory, because at the date of the assignment of his interest by her son to her, the board held no moneys of J. B. Hill, and at the date of the service of said assignment on the board the money here sought was held, according to her views, not by that organization, but by the trustee A. B. Ruggles. The other answer is that the levies were effective because, although Ruggles was nominally the trustee, he was such merely *ex officio* as president of the board and was in reality the agent and servant of that association, the money in his hands being in effect in the custody of the board. The returns upon the writs of attachment and of execution showed that the levy in each instance was upon all moneys, etc., belonging to defendants mentioned in the writ or either of them "in possession or *under control* of the San Francisco Stock & Exchange Board." Respondent submits that the money was under control of the board and that service of notice upon said board through Ruggles as president was sufficient to fix her lien upon the fund. An inspection of article XIII of the constitution of the Stock & Exchange Board convinces us that respondent's position in this regard is correct. Under that article of the board's organic law the seat of the delinquent member "shall *revert to the board* and be appropriated to satisfy his creditors in the board." And while in such matters the president is made trustee for the indebted member and his creditors, he is only made so *ex officio*. It is true that for the purposes of disposing of them the president is vested with all of the rights and privileges formerly held by the delinquent member, but this investiture is only by virtue of his standing as president. In no event would his trusteeship for the purpose of sale of a membership and payment of creditors from the proceeds thereof survive his office. On his removal or resignation from the presidency it would be his duty at once to account for the funds in his hands, not to his successor (for perhaps none would have been selected immediately upon the happening of a vacancy in the office), but to the Stock & Exchange Board to which the title to the deposed member's seat had reverted. Clearly, though designated as a trustee for the delinquent debtor and the

# 558

latter's creditors, the president was merely an agent of the board, under its control, and was but a custodian of the funds in question. If he had embezzled the money he would have been answerable to the board because under the above quoted provisions of the said board's constitution the property in the seat of the deposed member had reverted to that association, and the proceeds of the sale thereof belonged to the board, because at no place in the constitution is provision made for transfer of the title to the seat from the board to the trustee. He is made trustee for the creditors and for their debtor, but not for the board, except to make the sale and to distribute the proceeds. The title to the seat would pass to the purchaser, not from the president as trustee, but from the board as owner. It follows that whether we consider the service of notice on the board, through its officer, or upon the trustee as one under the board's control, the levy was sufficient.

In any view of this litigation, appellant is without standing in her demand for the money derived from the sale of Hill's seat. If her theory is correct and the money was available, not as the property of the Stock & Exchange Board, but as a fund in the hands of a trustee, her assignment was subject to the same infirmity as were the attempted levies of the writs of attachment and execution, because it referred to "money in the hands of the Stock & Exchange Board." If that association never had in its possession any money due to Hill, then the attempted transfer of title to such a fund never became effective.

The judgment and order are affirmed.


Lorigan, J., Shaw, J., Angellotti, J., and Sloss, J., concurred.

Rehearing denied.